121 N.W.2d 646 (1963)
NISHNA VALLEY COMMUNITY SCHOOL DISTRICT, Appellee,
v.
MALVERN COMMUNITY SCHOOL DISTRICT, Appellant,
Board of Education in and for Mills County, Iowa, Amy Hammers, County Superintendent in and for Mills County, Iowa, Fern M. Robinson, County Treasurer of Mills County, Defendants.
No. 50934.
Supreme Court of Iowa.
May 7, 1963.
*647 Woodford R. Byington, Malvern, for appellant.
Hogzett & Burgett, Oakland, for appellee.
*648 Glen M. McGee, County Atty. of Mills County, for defendants.
LARSON, Justice.
The principal issue presented by this appeal is whether under the circumstances revealed by the pleadings and the stipulation of the parties, the defendant school district is legally indebted to the plaintiff district in the sum of $5,115.43. The trial court held it was, but we cannot agree.
It appears from the record that as a result of school district reorganization in Mills County, Iowa, the plaintiff, Nishna Valley Community School District, and the defendant, Malvern Community School District, came into legal existence on July 1, 1960. One of the results of this reorganization was that portions of three rural school districts, namely, Benton, Golden Hill, and Wearin, of less than four governmental sections, remained, and, being located between the new districts, became the object of litigation. See Allely v. Board of Education, 252 Iowa 1142, 110 N.W.2d 410. The county board of education attached these remnants to the Malvern District in March, 1960. Certain residents and taxpayers in those areas filed an injunctive action in the district court, and on the 27th of June, 1960, a temporary injunction issued restraining the board's action from becoming effective on July 1, 1960. It provided in part "that the writ of injunction do issue * * * to maintain the status quo, and to restrain and enjoin the Defendant (County Board of Education) from setting over into the Malvern Community School District of Malvern, Iowa, any lands situated in Wearin, Golden Hill and Benton School Districts, Mills County, Iowa, which were not included in the aforesaid Malvern Community School District at the time of election thereon, until further order of this Court." (Emphasis supplied.) Pursuant to a hearing in the district court, this injunction was dissolved November 9, 1960, and these lands were set over into the Malvern District. An appeal from that adjudication was taken to this court and the action of the board and the district court was affirmed. Allely v. Board of Education, supra.
It also appears that when school commenced on August 29, 1960, fifteen pupils from the Benton area and three pupils from the Golden Hill area enrolled in the plaintiff Nishna Valley Community School District, where they continued in attendance and were transported during the 1960-1961 school year. These students had attended school for the year 1959-1960, and prior thereto, at either the Hastings or Henderson public schools, which were merged into and formed a part of the Nishna Valley School District as a result of the county reorganization effective July 1, 1960. The tuition and transportation costs for these pupils at the approved rate amounted to $5,115.43.
It was stipulated that the remnant rural districts of Benton and Golden Hill made no designation of their pupils to the Nishna Valley Community School District for the school year 1960-1961.
It was further stipulated the assets of the three remnant rural districts on hand July 1, 1960, became the property of the appellant district and that no part thereof has been received by the appellee, and that appellant did inform the superintendent of appellee school district of the court's action in dissolving the injunction staying the annexation of those areas to appellant district on or about November 15, 1960.
Appellant contends (1) that it does not owe for any tuition or transportation for the elementary pupils nor for any transportation for high school pupils from Benton and Golden Hill rural school districts for the period from August 29, 1960, to and including November 9, 1960, because these pupils were not properly designated to attend appellee's school district, and (2) that it was not indebted for said services after November 9, 1960, for after that date the students were residents of the Malvern Community School District and were required by law to attend its schools or pay *649 their own tuition and transportation to schools in another district. Appellant's first contention cannot be sustained, but its second has merit.
I. This is an action for declaratory judgment. It asked the court to declare appellant district indebted to appellee district in the stipulated amount, plus interest and costs, and "for such other and equitable relief as to the Court may seem proper and just." No question is raised as to the propriety of this form of action. We presume it was tried as in equity, but due to the unusual circumstances the case is without precedent.
The first problem presented is whether these pupils were properly designated to attend the Nishna Valley Community School and, if so, for what period. It is conceded that for some years past the pupils from these rural districts were designated by the authorities to attend the schools at Hastings and at Henderson, both of which became a part of the reorganized appellee school district on July 1, 1960. In view of the pending litigation to determine to which of the two newly-reorganized districts these remnants belonged, and the district court injunction holding in abeyance the county board of education's action in attaching them to the Malvern district, it is not surprising that no specific action was taken either by the rural boards or the county superintendent under Sections 279.16 and 279.17, Code, 1958, I.C.A., to designate any different school or schools these pupils were to attend during the 1960-1961 school year. Under this situation there is ample basis for the implication that the pupils were to attend the Nishna Valley Community School District, which then included the Hastings and Henderson schools. Apparently nothing was done officially to repudiate the preexisting designation or such an implication prior to November 9, 1960, when the court's injunction was dissolved.
Section 279.16, Code, 1958, I.C.A., provides: "If a school is closed for lack of pupils, the board of directors of such school corporation shall designate an approved public school or schools for attendance and shall see that the necessary arrangements are made with the designated school or schools for school facilities and transportation. The resident district shall be responsible for the tuition and for transportation as required by law for all pupils attending the designated school. * * * Designations shall be made as provided in chapter 285."
It is provided in Section 285.4, Code, 1958, I.C.A.: "* * * After designations are made, they will remain the same from year to year except that on or before July 15, of each year, the rural board or parents may petition the county board for a change of designation to another school. * * *" Nothing appears to indicate any change of designation was requested or made involving these children, and apparently all parties including the county board did not feel they should do so under the existing injunction. The implication of due designation, we think, is sufficient.
II. It must be assumed the prior designations to the Hastings and to the Henderson schools were properly made. School District of Soldier Twp. Crawford County v. Moeller, 247 Iowa 239, 245, 73 N.W.2d 43, and citations. The responsibility for the education of these eighteen children temporarily remained that of their resident districts, Benton and Golden Hill. These prior designations indicate that their own schools were closed and that they were sending the pupils to other schools outside their districts. Thus we have existing designations for the pupils to attend the Hastings and Henderson schools, which by the reorganization had become a part of appellee district. While the county board's action purported to change the residents of those areas for school purposes from rural independent districts to the Malvern District as of July 1, 1960, the court's injunction prevented that move "until further order of this Court." It left the situation in status quo with that time condition attached. The change of residence was not *650 annulled but was only held in abeyance for an indefinite period. Under such conditions it is fair to assume that until the injunction was dissolved November 9, 1960, the children remained, for school purposes, residents of the rural remnant districts and were to attend the previously-designated schools or their reorganized successor, the appellee herein. Such an assumption, of course, is rebuttable, but nothing appears herein to rebut it until after November 9, 1960.
When the children were permitted to enroll and attend the Nishna Valley Community school, the obligation to reimburse it for tuition and for transportation became that of the remnant resident districts of Benton and Golden Hill. As the trial court put it, there was at least an implied agreement that said districts would pay those expenses, and that when the Malvern District took over the assets of these rural areas, it took also the obligation to pay that indebtedness rightfully incurred. This is especially true for such expenses incurred during the period they were required to remain independent rural districts.
Assuming, then, that implied agreement extended only for the period from August 29, 1960, until November 9, 1960, we arrive at the conclusion that, both under the law and under fair logic and reason, the defendant school district should pay this obligation of the areas annexed. Since the amount of the tuition and transportation for that period is not established, the cause must be remanded to do so. Nevertheless, we are well satisfied the Malvern Community School District is indebted to and must pay the Nishna Valley Community School District for those services during the period from August 29, 1960, to November 9, 1960.
III. Appellee contends and the trial court seemed to agree that the implied agreement between the remnant districts and appellee to provide tuition and transportation for their pupils extended for the entire school year 1960-1961, and that that obligation did not cease when the injunction was dissolved. We cannot agree. The change of residence of those in that area was only stayed temporarily, and the existence of these rural districts extended only "until further order of this Court." All parties were aware of this provision and knew, or should have known, the life of these remnant districts was only temporarily extended, and in all probability would not extend for the full school year. Any agreement between such remnant districts and the appellee, therefore, must have been made subject to the condition expressed in the injunction, and was to be binding on them only as long as they remained independent districts. That being true, and in the absence of some evidence to the contrary, it is not reasonable to believe the agreement was intended to extend the districts' obligation after their termination or to obligate any district to which they might be legally attached after the stay of the attachment was dissolved. In other words, we believe the implied agreement between the remnant districts and the appellee was limited to the period of the stay, and no longer. Therefore, the possibility of a transfer of these children must have been considered and contemplated.
The result would not be unlike a voluntary move by parents from one district to another. If done during the school year, their children, of course, could not remain in the original district without paying their own tuition and transportation, for a change in residence usually makes necessary a change of school systems. Here, when the children involved enrolled in the Nishna Valley Community schools and were transported, they did so as residents of the remnant school districts. When the stay order was dissolved, those districts expired and the children's residences were changed as effectively as though their parents had moved. They were then required to attend the Malvern Community schools or to provide their own tuition and transportation to their former schools. We find no hardship *651 or unreasonable requirement under such an interpretation of this understanding of the parties. On the other hand, we do not believe the injunction proceedings were used as a method of securing the attendance of these children in the appellee district for the full school year.
It must have been clear to all concerned that the temporary injunction could extend the independent existences of the Golden Hill and Benton remnant districts only briefly, and that, unless it was made permanent, those areas would stand annexed to the Malvern District. We find no merit in the contention that, while this temporary stay was in effect, the remnant districts could or even tried to bind themselves or the reorganized district to which they were to be attached beyond any reasonable period after their expiration. In the light of the provisions of the injunction, the implied agreement covered only the period therein provided.
IV. From the record it appears that on or about November 15 or 16, 1960, the superintendent of the Malvern District's school, at the direction of its board of directors, informed the superintendent of plaintiff's school of the November 9th court action, and it further appears the Malvern Community School District had grade and high school facilities available for the pupils from the former Benton and Golden Hill school districts. Thus it does not appear that appellant consented to an extension of any agreement between the remnant districts and appellee to cover the entire 1960-1961 school year. In fact, the evidence is to the contrary.
As previously pointed out, after November 9, 1960, the residences of these pupils changed, for then the area involved became attached to the Malvern District under the former order of the Mills County Board of Education. Of course the appeal to us did not stay the decision of the county board on March 15, 1960. Rule 337, R.C.P., 58 I.C.A.; Archer v. Board of Education, 251 Iowa 1077, 104 N.W.2d 621; Scheffers v. Scheffers, 241 Iowa 1217, 44 N.W.2d 676, and citations. Rule 337, R.C.P., provides: "No appeal shall stay proceedings under a judgment or order unless appellant executes a bond with sureties, to be filed with and approved by the clerk of the court where the judgment or order was entered." No such bond was filed or stay ordered in the case of Allely v. Board of Education, supra, 252 Iowa 1142, 110 N.W.2d 410. If, then, the Malvern District had proper school facilities for these pupils' instruction and transportation, they were obliged to transfer to the Malvern school. If they did not do so, the obligation to reimburse the school they chose to attend becomes that of those making the choice.
Section 282.6, Code, 1958, I.C.A., provides: "Every school shall be free of tuition to all actual residents between the ages of five and twenty-one years * * *." (Emphasis supplied.) As a general rule in a school district where adequate school facilities are available, pupils resident in such district must avail themselves of the facilities so furnished, and they do not have the absolute right to attend a school in another district at the expense of their local board. 79 C.J.S. Schools and School Districts § 451, page 362; 47 Am.Jur., Schools, § 151, page 406. There was no contention here the Malvern school was inadequate or did not maintain proper facilities for these eighteen pupils, and we must assume they were adequate. Having failed to avail themselves of these facilities, although residents of that district after November 9, 1960, and without a designation from the appellant district, actual or implied, the appellee district cannot recover for such facilities furnished those pupils. Clearly there was no agreement, express or implied, that the defendant district would assume that obligation. We must, therefore, conclude the Malvern Community School District is not indebted to the Nishna Valley Community School District for either the tuition or transportation furnished by it after November 9, 1960, and to this extent the decision of the trial court must be reversed.
*652 V. There is no merit to the claim of unjust enrichment, for here the defendant district stood ready to meet its educational responsibility to these children. True, it received the assets of the remnant districts, but their use was committed to the maintenance of facilities in the newly-reorganized district, not to the individual use of the former residents of the rural independent districts who decided to send the children elsewhere. It must be presumed, in the absence of a showing to the contrary, that they were used for the purpose intended and, if the pupils formerly of the Benton and Golden Hill districts did not avail themselves of these facilities, that non-use will not result in enrichment of the appellant district. The obligation, if any, to reimburse appellee for its services from November 9, 1960, until the end of the school year in 1961 was not that of appellant district. Costs shall be divided, one third to appellant and two thirds to appellee.
Reversed and remanded.
All Justices concur.